**Kent P. HOLLINGSWORTH, Appellant,**

v.

**Betty B. HOLLINGSWORTH and Linda W. Covington, Appellees.**

**No. 89–CA–001815–MR.**

Court of Appeals of Kentucky.

Nov. 2, 1990.

Richard M. Compton, Georgetown, for appellant.

Linda Covington Christian, Lexington, for appellees.

Before CLAYTON, MILLER and STUMBO, JJ.

STUMBO, Judge:

This case involves a dissolution of marriage between Kent P. Hollingsworth, the appellant, and Betty B. Hollingsworth, the appellee. The appellee was granted maintenance and attorney fees by the Scott Circuit Court. Linda W. Covington, the appellee's attorney, was added as a necessary party. The appellant contends the trial court erred in granting attorney fees

and in the amount of maintenance awarded. We disagree with appellant and affirm.

The parties had been married thirty (30) years. They had five (5) children during the marriage, all now past the age of eighteen (18). The parties were divorced on August 20, 1981. A separation agreement was incorporated into the decree of dissolution which called for the disposition of all property, child support, and maintenance. For purposes of this case, the pertinent portion of the agreement dealing with maintenance is as follows:

That it is further agreed by and between the parties hereto that Second Party shall pay to the First Party the total sum of One Thousand Five Hundred Dollars ($1,500.00) per month as maintenance and as support for said infant child. The first of said maintenance and support payment shall be due and payable on the first day of the month subsequent to the entry of a Decree of Dissolution between First and Second Parties, and continue to be due and payable on the first day of every month thereafter until the infant child of the parties reaches majority or is emancipated at which time said payment shall be reduced to One Thousand Two Hundred Dollars ($1,200.00) per month as maintenance. Prior to the infant child reaching majority or becoming emancipated the Court may increase or decrease said Fifteen Hundred Dollars ($1500.00) a month payment only to the extent that it is applicable to the needs of said child and not as it applies to the needs of the First Party. Provided however, that in the event Second Party's gross income is at any time less than Seventy Thousand Dollars ($70,000.00) a year then for every ten (10%) percent reduction in the ˙gross income of Second Party there shall be a ten (10%) percent reduction in maintenance for payments to be made by Second Party to First Party. In the event First Party is employed at a gross salary of more than Twelve Thousand Five Hundred Dollars ($12,500.00) per year then there shall be a fifty (50%) percent reduction in said maintenance payments

due first Party for each dollar that First Party earns in excess of Twelve Thousand Five Hundred Dollars ($12,500.00). For example, if First Party's salary is Fourteen Thousand five Hundred Dollars ($14,500.00) then the Eighteen Thousand Dollars ($18,000.00) maintenance and child support payment ($14.400.00 maintenance payment) shall be reduced by One Thousand Dollars ($1,000.00).

Appellant worked as a publisher making $115,000 annually until he quit his job in December 1986. In January 1987, he began working for another publication where he made $200,000 annually. He was fired from that job in March 1987. He subsequently ceased maintenance payments to the appellee. The appellee did not work during the marriage. After the divorce, she worked as a secretary making $130 weekly and received maintenance from the appellant.

The appellant had not retained employment by March 1988 when the Commissioner's report on appellant's motion to be relieved of child support and maintenance was entered. Since the appellant had not found employment due to his own choice, the Commissioner recommended that an interim formula be used to determine the amount of maintenance until the appellant's salary returned to the threshold amount dictated in the separation agreement. That formula in its· entirety is as follows:

G. There seems to be some confusion as to how maintenance is to be paid.

1. Equity does not countenance the wife's waiting without maintenance for an entire year only to determine at the end of the year what husband's income was. Accordingly, Commissioner recommends that husband's 1987 gross income be determined and maintenance set according to settlement agreement scale. For 1988, wife shall receive monthly maintenance during 1988 on the basis of husband's 1987 gross income.

a. The foregoing paragraph is predicated upon husband's not having had a ·regular salary during 1987. Yet, husband at hearing indicated that he would

be reinstated by the bar association sometime during 1988 and that he had been offered a job with a law firm upon his reinstatement.

b. This paragraph countenances husband's receiving a regular salary during 1988 or 1989. Accordingly, husband shall provide verified quarterly reports, within 30 days after the conclusion of each calendar quarter, to wife during 1988 as to the status of his salaried income. At such time as husband receives a regular salary, then that regular salary shall be added to his previous year's gross income and his monthly maintenance during 1988 increased accordingly until it reaches the sum provided for in parties' agreement.

2. At the end of 1988, husband's gross income shall be determined, maintenance set according to agreement scale and wife shall receive as monthly maintenance in 1989 according to husband's 1988 gross income, but no more than that sum provided in parties' agreement.

3. At such time as husband's regular salary income produces that level of monthly maintenance provided for in parties' settlement agreement, then the foregoing provisions may be omitted.

The final order upholding the Commissioner's recommendation was entered on June 7, 1988. The order did remand on issues concerning the appellant's gross income. No appeal was taken. On remand, the Commissioner determined appellant's gross income for 1987 was $40,358; therefore appellant's maintenance obligation was $720 per month. The Commissioner's determination was approved by court order on September 1, 1988. Again no appeal was filed. On January 3, 1989, the Commissioner issued a report recommending that the appellant continue to pay $720 monthly maintenance and $1,546.36 in appellee's attorney fees. Appellant filed exceptions to the order on January 13, 1989. Later in 1989, the appellant's salary and annuity income combined pushed his gross income past the threshold level stated in the separation agreement. On July 7, 1989, the Commissioner thereupon recommended the appellant return to paying the full $1,200 per month maintenance pursuant to the March 2, 1988 report and the separation agreement; the appellant made exceptions on July 11, 1989. Appellant's exceptions to the January 3 report were overruled by court order on July 28, 1989. The appellant, on August 10, 1989, filed exceptions to the July 28 order. The circuit court, on August 17, 1989, overruled all exceptions to the July 7 report of the Commissioner. Appellant thereafter, on August 25, 1989, brought this appeal asserting errors in the July 28 and August 17 orders.

■ Prior to considering the merits of each issue, this Court contemplated whether the appellant's failure to comply with CR 76.12(4)(c)(iv) in its original brief would prohibit our consideration of the issues as suggested by the appellees. The first sentence of CR 76.12 begins, "[u]nless otherwise directed by the appellate court ..."; this phraseology gives this Court great discretionary power in determining whether to consider an argument. CR 76.12 also allows the appellant to file a reply brief. Although CR 76.12(4)(c)(iv) states that an argument in the appellant's brief must contain reference to the record showing where the issue was properly preserved for review, the purpose of this subsection is to save the appellate court the time and trouble of having to search the entire record to ensure the appeal was indeed properly preserved. Even though the appellant omitted the reference in his original brief, he did insert the necessary references in his reply brief to correct the omission. This serves the very purpose for which CR 76.-12(4)(c)(iv) was enacted; therefore, a reply brief may be used to both supplement an appellant's original brief and to correct a procedural defect related to CR 76.-12(4)(c)(iv). This Court, in its discretion, thinks it proper to now consider the merits of the case.

■ The first issue is that of attorney fees. Appellant complains that the trial court did not consider the financial resources of both parties as dictated by KRS 403.220 and *Poe v. Poe*, Ky.App., 711 S.W.2d 849 (1986). It is a well-known con-

cept that the trial court has great discretionary power in its determination to award or deny attorney fees. Although the court does not mention the financial resources of the appellee in its orders awarding the appellee attorney fees, there is no requirement that it do so. Nowhere does it state a trial court must make specific findings on the parties' financial resources. The obligation of the trial court is to *"[c]onsider the financial resources of the parties in ordering a party to pay a reasonable amount in attorney's fees." Poe, supra,* at 852, (emphasis added). The trial court need only "consider" the parties' financial situation. The record is replete with circumstances in which the trial court was made aware of each party's financial situation. Based on the record before this Court, it appears that the trial court's award of attorney fees was reasonable and will not be disturbed.

The second argument of appellant dealt with maintenance. The Commissioner articulated the formula previously given in our facts to ascertain the amount of maintenance to be paid while appellant's gross income was below the threshold level stated in the separation agreement. Under this formula, the appellant was required to pay $720 per month during part of 1987 and all of 1988. When the appellant obtained employment with a law firm in 1989, his salary returned to an amount above the threshold level of the separation agreement. Therefore, the Commissioner ordered the appellant to resume total monthly payments of $1,200 in 1989.

■ The appellant argues the court must wait until the end of the calendar year 1989 to determine the amount of maintenance to be paid. We do not agree. The separation agreement called for maintenance to be paid on a monthly basis, beginning on the month following the entry of the decree of dissolution and continuing each month thereafter. Nowhere does the agreement state that the parties must wait until the end of each year to determine the husband's salary which is the basis for the amount of maintenance. This occurred in 1987 and 1988 solely due to the interim

formula used by the Commissioner while the appellant's salary was reduced. Subsection 3 of the formula applied by the Commissioner specifically allowed for a return to $1,200 monthly when the appellant's salary returned above the threshold level. That has now occurred, and accordingly, the maintenance was to be resumed at the $1,200 monthly amount.

■ Appellant also contends that the court refused to consider his losses for the year in determining his maintenance payments. What the trial court did was remand this issue for findings on how the appellant's gross income was determined prior to the reduction in maintenance payments. There was no indication that losses had ever been considered before. Not only this, but gross income by its very definition generally does not include losses. Losses are usually accounted for when determining adjusted gross income. Again, we see no clearly erroneous error on the part of the trial court.

■ The final error asserted by the appellant deals with an alleged modification by the court of the separation agreement. The modification in question was the use of the formula used to determine the amount of maintenance while the appellant experienced a reduction in income. Although the agreement did state the proportion of any reductions (i.e., 10%), the agreement was ambiguous in that it failed to state the method to be utilized in determining the amount of monthly maintenance. After careful review of the entire record before us, we believe the use of the maintenance formula by the Commissioner and the trial court to be a reasonable interpretation of the separation agreement.

In accordance with the reasoning and findings above, we affirm the decision of the circuit court on all issues.

All concur.